U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 DEC 30 AM 9: 00

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANNE VILBRIN,  )
  )
   Plaintiff,  )
  )
  )
   v.  )   Case No. 5:14-cv-00047
  )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
  )
   Defendant.  )

**OPINION AND ORDER**
**(Docs. 5 & 11)**

    Plaintiff Anne Vilbrin seeks reversal and remand of the Commissioner of Social Security's denial of her application for disability insurance benefits. *See* 42 U.S.C. § 405(g). Before the court are Vilbrin's motion to reverse the Commissioner's decision (Doc. 5) and the Commissioner's motion to affirm the decision (Doc. 11).

**I.      Background**

    Vilbrin was born in 1967 and was thirty-seven years old on her alleged disability onset date of November 1, 2004. She completed her GED in 1988. (AR 159.) She has previous work experience as a dishwasher, shipping and receiving clerk, and housekeeper. (AR 153.) She was frequently absent from her last job as a housekeeper. At the time, her father was dying of leukemia. (AR 166, 269.)

    Vilbrin was raised mainly by her grandmother, who died when she was a teenager. (AR 270.) She was sexually abused by her older brother when she was between the ages of four and fifteen. (*Id.*)

    Vilbrin is single. At the time she applied for disability benefits, Vilbrin lived with her mother, but she apparently now lives in her own apartment. (AR 189, 1345.) She provides some care for her mother, who has Alzheimer's. (AR 189, 1016.) Vilbrin was previously in a civil

1

union that dissolved. (AR 274.) Her former partner had a son from a prior relationship whom Vilbrin remains in contact with and considers to be her stepson. (*Id.*, AR 742.)

Vilbrin has a significant history of substance abuse. She began abusing alcohol when she was a teenager and reports that from the time she was fourteen until she turned twenty-eight she drank eight to fifteen drinks a day. (AR 328.) She stopped drinking prior to 2004. (AR 268.) She also has a history of drug abuse including oxycontin, cocaine, and other opiates. (AR 274.) Her primary care physician stopped prescribing narcotics to her in 2008 after she was suspected of selling her medications. (AR 757.) She attended the inpatient substance abuse treatment program at Valley Vista twice in 2007, and participated in intensive outpatient programs in 2007 and 2008. (AR 563, 612, 686, 692.) She regularly uses marijuana and is a heavy tobacco smoker. (AR 328, 563.)

Since 2004, Vilbrin has suffered from chronic abdominal pain, nausea, vomiting and diarrhea. (AR 152, 182.) Her primary care physician diagnosed her with chronic pancreatitis, although this diagnosis remains uncertain. (AR 389, 488, 1290.) She also suffers from anxiety and depression. (AR 1377.) More recently, she has developed osteoarthritis in her left knee. (AR 1001.) She has been taking methadone since at least 2008 for her pain. (AR 790.) On her disability application, she alleged that she has irritable bowel syndrome and post-traumatic stress disorder as well. (AR 49.)

## II.     Procedural History

Vilbrin applied for disability insurance benefits and supplemental security income on April 17, 2008. (AR 46.) Her applications were denied initially and on reconsideration. (AR 46-52.) Following a hearing, ALJ Thomas Merrill ruled on May 19, 2010 that Vilbrin was not disabled. (AR 19.) Vilbrin appealed to this court and the Commissioner stipulated to a remand for further proceedings. (AR 1118.) On remand, the ALJ was directed to obtain medical expert testimony regarding the severity of Vilbrin's impairments, further consider the severity of her mental impairments and pancreatitis, further consider treating and examining source opinion evidence, reconsider her RFC, obtain additional VE testimony, and determine whether substance abuse was a contributing factor to any finding of disability. (*Id.*)

The ALJ conducted another hearing on September 20, 2013. (AR 1065.) The ALJ heard testimony from two consulting physicians and a vocational expert. On December 4, 2013, the ALJ issued a decision stating that Vilbrin was not disabled. (AR 1024.) This appeal followed.

### III.    The ALJ's Decision

The Commissioner uses a five-step sequential process to decide whether an individual is disabled. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines if the individual is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If not, the ALJ then considers whether the individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or is expected to last continuously for at least twelve months. *Id.* §§ 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). At the third step, the ALJ considers whether the individual has an impairment that "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. *Id.* §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual is presumed to be disabled if he or she has a listed impairment. *Id.*; *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the individual is not presumptively disabled, the ALJ then considers the individual's residual functional capacity (RFC), which means the most work the claimant can still do despite his or her impairments based on all the relevant medical and other evidence in the record. At this step, the ALJ also considers whether the individual can still perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1545(a); 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the individual can perform "any other work." *Id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). The claimant bears the burden of proof at steps one through four. *Butts*, 388 F.3d at 380-81. At step five, there is "a limited burden shift to the Commissioner," requiring her to show only "that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Applying the sequential framework, the ALJ found that Vilbrin had not engaged in substantial gainful activity since her alleged onset date of November 1, 2004. (AR 1026.) At step two, the ALJ found that Vilbrin had the following severe medically determinable impairments: "opioid dependence, cannabis abuse, pancreatitis, depressive disorder, and anxiety

disorder." (AR 1027.) He noted that Vilbrin also had osteoarthritis in her left knee, but found that this impairment was not severe because there was no evidence that it significantly limited her ability to perform basic work activities. (*Id.*) The ALJ determined that none of Vilbrin's impairments, alone or in combination, met a listing. (AR 1028.)

At step four, the ALJ found that Vilbrin had the RFC to perform light work, "except that she can lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday and sit for six hours in an 8-hour workday." (AR 1030.) He found that she had no limitations in understanding and memory and could maintain concentration, persistence and pace for two-hour blocks during a workday and workweek. He found that she could handle four-step tasks and routine changes in work activities. She could get along with supervisors, be aware of hazards, and travel. However, she must avoid close interaction with the general public and crowded co-worker situations. (*Id.*)

Vilbrin testified at the 2010 hearing that she suffered from constant pain, nausea, vomiting, and diarrhea which limited her ability to function on a daily basis, and that due to her anxiety and pain she had difficulty handling stress, concentrating, and completing tasks. The ALJ found Vilbrin's testimony regarding the extent of her symptoms not to be credible. (AR 1031.) With regard to her pancreatitis, he noted that despite multiple medical tests, her diagnosis was uncertain and there was little proof that she suffered from this condition. (AR 1032.) Although she testified that she suffered from constant vomiting and diarrhea, no episodes of vomiting or diarrhea were noted during her inpatient hospital stays. (AR 1032.) Her clinical providers reported that she consistently presented with normal mental status, good grooming and otherwise appropriate behavior. (*Id.*) She had generally maintained her weight and even gained weight over the alleged disability period, which was inconsistent with her claims of constant vomiting and diarrhea. (AR 1033.) There was evidence of drug-seeking behavior in the record. (*Id.*) She reported that she was able to care for herself without assistance, do some housework, operate a motor vehicle, and shop. Over the alleged disability period, she traveled multiple times to Nevada and Florida to visit relatives and to Massachusetts to visit her significant other. (*Id.*)

The ALJ found that Vilbrin was unable to perform her past relevant work as a dishwasher, housekeeper, or shipping and receiving clerk, as these were all medium exertion positions. (AR 1036.) Based on the testimony of the vocational expert, he found that there were

4

other jobs in the national and local economy that Vilbrin could perform with her RFC, including cleaner, laundry worker, collator operator, marker, mail sorter, and machine operator. (AR 1037.) The ALJ concluded that Vilbrin was not disabled from the alleged onset date through the date of his decision.

### IV.   Standard of Review

This court reviews the administrative record *de novo* to determine whether the Commissioner's decision is supported by "substantial evidence" and uses the correct legal standard. *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where there is substantial evidence to support either position, the determination is one to be made by the factfinder. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). In reviewing a decision of the Commissioner, this court must be mindful of the remedial purpose of the Social Security Act. *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### V.   Analysis

Vilbrin argues that the ALJ's evaluation of the medical opinions in the record is not supported by substantial evidence. Specifically, she contends that in determining RFC, the ALJ improperly relied on two opinions given by agency consulting physicians in 2008 instead of the opinions given by the agency consulting physicians who testified at the 2013 hearing. She argues that the 2013 opinions were consistent with the opinions of plaintiffs' treating physicians, which should have been given greater weight.

#### a.   Treating Physician Opinions

A treating physician's opinion on the nature and severity of a claimant's condition normally is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(c)(2). Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to significant consideration, given that

the treating physician is likely to be in the best position "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). When the treating physician's opinion is not given controlling weight, the ALJ must consider "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must give "good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(ii); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008).

The ALJ gave limited weight to the opinion of Dr. Kevin Crowley, who was Vilbrin's primary care physician from 1988 to 2012. In a medical source statement from March 2010, Dr. Crowley stated that Vilbrin suffered from "chronic pancreatitis and opioid dependence" coupled with depression. In his opinion, these impairments would frequently interfere with her concentration and attention and limit her ability to complete even simple work tasks. He opined that she was capable of a low-stress job; could sit for at least two hours at a time and six hours in a workday, and stand or walk for one hour at a time or at least six hours in an eight-hour workday. He did not think she needed a job that allowed her to alternate standing and sitting, and did not know whether she would sometimes need to take unscheduled breaks during a workday. (AR 1011-15.) In a follow-up opinion dated April 6, 2010, he stated that Vilbrin suffered from severe abdominal pain and nausea daily. When asked how frequently she experiences vomiting, he wrote "You'll have to ask her." (AR 1020.) He opined that her condition would likely diminish her work productivity by twenty percent or more. (*Id.*)

The ALJ adequately explained his reasoning for giving Dr. Crowley's opinion limited weight, and his reasoning is supported by the record. Vilbrin visited Dr. Crowley almost monthly from 2005 to 2012, and he frequently noted chronic pancreatitis as the reason for her visits. (AR 395, 400, 410, 522, 524, 530, 541, 790, 796, 825.) However, his notes largely recount her own subjective reports of pain—which the ALJ found to be of dubious credibility— and include almost no clinical findings about her functioning. There are few clinical findings

anywhere in Dr. Crowley's notes other than occasional weight measurements. His notes reflect doubt about the diagnosis of chronic pancreatitis and he questioned whether he was being "too trustful" in prescribing medications in light of Vilbrin's history of substance abuse. (AR 849; 1292.) At one point, Dr. Crowley suggested that Vilbrin's reported symptoms might be related to Vilbrin being her mother's sole caretaker. (AR 1331.) He also stated that despite the lack of evidence to support his diagnosis, he thought her condition probably was chronic pancreatitis and "we don't need to be looking hard for other reasons for her pain." (AR 1292.)

Furthermore, Dr. Crowley's diagnosis of chronic pancreatitis conflicts with those of gastroenterologists Dr. Andrew Minkin, who found in 2007 that there was "no evidence of chronic pancreatitis," and Dr. Stuart Gordon, who determined in 2009 that an upper EUS procedure "d[id] not support a diagnosis of chronic pancreatitis." (AR 488, 914.) Other diagnostic studies showed that Vilbrin's abdomen, pelvis and colon were normal. (AR 443, 810, 965.) Dr. Crowley is a family practitioner, not a specialist, and the fact that his diagnosis conflicts with those of the specialists undermines his opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). While the ALJ did not mention this factor or specifically consider the length of Vilbrin's treatment relationship with Dr. Crowley, the court finds that he complied with the substance of the treating physician rule. *See id.* (affirming ALJ's decision denying disability benefits where it was unclear on face of decision whether ALJ considered applicability of treating physician rule, but "the substance of the treating physician rule was not traversed"); *Duval v. Colvin*, No. 6:13-cv-495 GLS/ESH, 2014 WL 4637092, at *12 (N.D.N.Y. Sept. 16, 2014) (explaining that "there is no requirement to recite and discuss each and every factor slavishly" so long as ALJ gives clear explanations for weight accorded to treating physician evidence).

The ALJ also gave limited weight to the August 2013 opinion of Dr. Sarah Davies, who became Vilbrin's primary care physician when Dr. Crowley retired in 2012. (AR 1232, 1356.) She stated that Vilbrin had generalized anxiety, PTSD, major depression, panic disorder,

agoraphobia, polyarthralgia,[1] chronic pancreatitis, and chronic obstructive lung disease. Vilbrin's symptoms included chronic abdominal pain, panic and anxiety in social settings, depressed mood, and shortness of breath. Dr. Davies opined that Vilbrin's conditions interfered with her ability to concentrate on simple tasks for two-hour periods and were likely to reduce her work productivity by twenty percent or more. She opined that Vilbrin was incapable of even a low-stress job. She stated that Vilbrin could sit for more than two hours at a time and for at least six hours in a workday; could stand or walk for 30 minutes at a time and about two hours in a workday; did not need to alternate between standing and sitting; would sometimes need to take unscheduled breaks due to panic attacks; could never lift or carry ten pounds, stoop, or climb ladders. She also stated that Vilbrin could rarely perform fine manipulation with her left hand and was limited to occasional reaching with either arm. She opined that Vilbrin could only work about twenty hours per week and would likely miss more than four days per month of work due to her ailments. (AR 1389-95.)

The ALJ adequately explained why he gave limited weight to the opinion of Dr. Davies, and these reasons are supported by the record. Her opinion assessed severe upper extremity limitations—such as inability to reach or perform fine manipulations or feeling with the left hand—that are unsupported by any medical evidence. Further, Dr. Davies' assessment that Vilbrin's anxiety and other limitations would cause her to frequently be absent from work and would completely prevent her from functioning in social settings was contradicted by record evidence that Vilbrin took trips to Nevada, Florida, and elsewhere to see family and friends throughout the period under review and as recently as 2012. (AR 523, 1018, 1266, 1289, 1341.) It was also contradicted by her consistent attendance at medical appointments and the reports of her providers that she exhibited normal affect and behaved appropriately. (AR 1379, 1384, 1387.)

The ALJ also gave good reasons for discounting the February 2010 opinion of Dr. Christopher Meriam, an orthopedic surgeon. Vilbrin saw Dr. Meriam once in February 2010 and he diagnosed her with osteoarthritis and patellar chondromalacia in her left knee. Dr. Meriam filled out a form stating that Vilbrin could sit for one hour at a time and up to six hours in an

---

[1] Polyarthralgia "is a subjective complaint/symptom of painful joints." *Saari v. Merck & Co.*, 961 F. Supp. 387, 395 (N.D.N.Y. 1997).

eight-hour day, could stand for one hour at a time and up to four hours in an eight-hour day, could lift up to twenty pounds rarely and less than ten pounds occasionally, and could never crouch or squat. As the ALJ noted, there is little evidence in the record that Vilbrin's knee pain limited her functioning prior to her diagnosis of arthritis—indeed, the record shows that she was walking three to four miles a day. (AR 1006.) At the time of diagnosis she reported that the pain in her knee had increased and that she was only able to walk half a mile and could not stand or sit for extended periods of time. (AR 1006.) However, there is virtually no mention of knee trouble after 2010 and the most recent treatment notes report her gait to be normal. (AR 1359, 1387.) This supports the ALJ's conclusion that Vilbrin's osteoarthritis did not limit her functioning to the extent provided by Dr. Meriam.

### b. Consulting Physician Opinions

In general, reports from non-examining providers deserve less weight than those of examining providers. *Burgess*, 537 F.3d at 128. However, the regulations permit the opinions of non-examining agency consultants to override those of treating sources when the former are supported by evidence in the record and the latter are not. *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); 20 C.F.R. § 404.1527(f)(2)(ii) ("State agency . . . psychological consultants . . . are highly qualified . . . medical specialists who are also experts in Social Security disability evaluation . . . ."). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

#### i. Physical RFC Assessment

In 2008, agency medical consultant Dr. Leslie Abramson reviewed Vilbrin's medical records and determined that she had a history of chronic abdominal discomfort and bowel movement irregularities and was dependent on narcotics for pain control. Dr. Abramson determined that Vilbrin could lift and carry ten pounds frequently and twenty pounds occasionally, could sit and stand with normal breaks for about six hours in an eight-hour workday, and had no limitations in pushing or pulling or other physical limitations. (AR 780-87.) The ALJ gave substantial weight to Dr. Abramson's opinion, finding that it was consistent

with the medical evidence and evidence of Vilbrin's level of activity throughout the period under review. (AR 1034.)

At the 2013 hearing, the ALJ heard the testimony of Leonard Rubin, an internal medicine physician who reviewed Vilbrin's medical records from 2004 to the time of the hearing. Dr. Rubin opined that Vilbrin had moderate limitations due to her pancreatitis and osteoarthritis. He agreed with Dr. Meriam's opinion that Vilbrin would be able to lift and carry ten pounds occasionally and twenty pounds rarely, but he also agreed with Dr. Abramson's opinion that Vilbrin could lift and carry twenty pounds occasionally, stating that each opinion was likely accurate for the time when it was made. (AR 1070.) He felt that it was unreasonable to say what her specific limitations were over the entire disability period, and said she seemed to be "moderately disabled," but he declined to give a more specific assessment because he had not examined her. He agreed that nausea and vomiting were reasonably related to pancreatitis, but stated that these symptoms did not seem to be "as much a part of her problem as her psychological difficulties." (AR 1072.)

Vilbrin argues that the ALJ misrepresented Dr. Rubin's testimony in his decision. The ALJ described Dr. Rubin as stating "that there is nothing in the record to support the claimant's need for multiple rest breaks" and that Vilbrin's pancreatitis "was not a severe disabling condition." (AR 1031; Doc. 5 at 11.) However, the ALJ was not directly quoting Dr. Rubin's testimony. Taken in context, his description is supported by the record. Dr. Rubin stated that Dr. Crowley's description of Vilbrin's symptoms "certainly doesn't indicate a disabling illness if he's not able to say, 'Wait a second. This poor woman can't even work.' He's saying you have to ask her. I have difficulty translating that into degree of disability." (AR 1073.) When asked how often Vilbrin would need rest periods, Dr. Rubin stated that the record seemed to indicate two or three times a day, but there was no "clear statement that confirms that." (AR 1074.) He noted that her records list chronic pancreatitis as one of her conditions, but they also mention that she has gained weight, "and that's not consistent with severe chronic pancreatitis whose victims usually lose weight and have a great deal of trouble maintaining their nutrition. So . . . there's a lot of stuff in here that sort of is contradictory." (AR 1075.) He also noted that she was not prescribed pancreatic enzymes, which are a typical treatment for chronic pancreatitis because the

10

patient is not able to make digestive enzymes. (*Id.*) Although Dr. Rubin's testimony was not a model of clarity, the substance of his testimony is accurately reflected in the ALJ's decision.

The ALJ gave some weight to Dr. Rubin's opinion to the extent that it was consistent with that of Dr. Abramson. He adequately explained his reasons for doing so, as required by the regulations. 20 C.F.R. § 404.1527(e) (requiring ALJ to explain reasons for weight given to nonexamining sources). As the ALJ noted, Dr. Rubin agreed with the RFC assessments of both Dr. Meriam and Dr. Abramson and found them to be similar. He declined to give his own opinion regarding Vilbrin's specific limitations. (AR 1068.) Thus, Dr. Rubin essentially reconfirmed Dr. Abramson's 2008 RFC assessment. The ALJ did not err in relying on Dr. Abramson's opinion where, as here, it was seconded by a medical expert who had the benefit of reviewing the entire medical record.

### ii. Mental RFC Assessment

In 2008, agency consulting psychologist William Farrell reviewed Vilbrin's records and found that she had medically determinable mental impairments of depression, anxiety, personality disorder, and substance addiction disorder. He described her history of substance abuse, her reports of constant pain and anxiety around strangers, and the fact that she had been voluntarily hospitalized in 2006 with suicidal ideation. He also noted that she generally presented with normal affect and appropriate behavior and was able to care for herself and perform routine activities of daily living. He noted that Vilbrin was no longer reporting suicidal ideation. He also found that her allegation of PTSD was not supported by the record. He determined that her mental impairments caused mild limitations in activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence and pace. Specifically, he found that she was moderately limited in her ability to complete a normal workday and week without interruptions from psychologically based symptoms. He also found that she was moderately limited in her ability to interact appropriately with the general public and coworkers, and to adapt to changes in the work setting. (AR 762-79.) The ALJ gave substantial weight to Farrell's opinion, finding that it was consistent with medical and other evidence in the record. (AR 1035.)

At the 2013 hearing, consulting psychologist Ira Hymoff testified that the records established that Vilbrin had "an affective disorder which is some sort of depressive disorder," an anxiety-related disorder, and a substance abuse disorder. (AR 1077.) He stated that prior to 2013, substance abuse was very significant in the record and "[i]t was hard to sort out the mental health issues with the substance abuse issues." (AR 1079.) However, in his opinion Vilbrin's conditions did not meet or equal a listed impairment, even with substance abuse. (AR 1081.)

Hymoff opined that Vilbrin's impairments would result in moderate limitations in her ability to perform activities in a schedule, to be punctual, and to work a normal day and week without interruptions from psychologically based symptoms. (AR 1082.) He also opined that Vilbrin would be moderately limited in her ability to interact with the public. (AR 1082.) He agreed that she had no significant limitations in understanding and remembering, could maintain concentration, persistence and pace to work two hours at a time, and could complete four-step, low-stress tasks. (AR 1083.) He agreed that she should not interact closely with the public and should avoid crowded coworker situations, but that she got along fine with authority, could manage changes expected in routine work activities, was aware of hazards, and could travel. (AR 1083.)

When asked by Vilbrin's attorney whether it was reasonable to expect Vilbrin to miss work two times a month based on her records, Hymoff stated that the most recent records supported that level of impairment. (AR 1086.) He referred to 2013 treatment notes stating that Vilbrin reported suffering from severe social anxiety, panic attacks and agoraphobia and having trouble leaving her home. He did not believe that level of absenteeism was supported by the record prior to 2013. (AR 1085.)

The ALJ gave "some weight" to Hymoff's opinion, finding that his testimony regarding Vilbrin's moderate impairments was consistent with the record. His RFC determination largely reflected Hymoff's opinion. However, the ALJ dismissed Hymoff's opinion that Vilbrin would likely be absent from work two to three times a month, finding that it was inconsistent with the medical evidence.

The ALJ's assessment of Hymoff's opinion is supported by the record. It is true that Vilbrin reported worsening anxiety and depression to Dr. Davies and to her psychiatrist, Andrew

Koo, over several visits in the first half of 2013. The treatment notes to which Hymoff referred recount Vilbrin's subjective reports of her symptoms. (AR 1377, 1396.) In his most recent note, however, Dr. Koo opined that "[t]he worsening is associated temporally with dose titration of Cymbalta so that is the most likely cause." (AR 1386.) Despite Vilbrin's reports that she was increasingly anxious and unable to leave her house, she regularly attended her medical appointments. Dr. Koo noted at each session in 2013 that Vilbrin continued to exhibit appropriate dress and grooming, was cooperative, energetic and maintained eye contact, spoke coherently and demonstrated good insight. He stated that her mood seemed anxious but that she had an appropriate affect. (AR 1379, 1384, 1387.)  These factors contradict Hymoff's opinion that Vilbrin was likely to miss work frequently, and they support the ALJ's decision. As noted above, conflicts in the medical evidence are for the ALJ to resolve. *Veino*, 312 F.3d at 588.

The ALJ gave good reasons for the weight he accorded to the testimony of the various experts, and those reasons are supported by substantial evidence. Reversal is therefore not warranted in this case.

## VI.   Conclusion

The court DENIES plaintiff's motion (Doc. 5) and GRANTS the Commissioner's motion (Doc. 11). The decision of the Commissioner is affirmed.

Dated at Rutland, in the District of Vermont, this 29th day of December, 2014.

Geoffrey W. Crawford, Judge
United States District Court